

FILED
MAY 2 4 2002
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>LEONTY FRATIS, CHARLES DEANE, WISEMAN, and FRANCIS WISEMAN,<br><br>Defendant. | Case No. A01-0251 CV (JKS)<br><br><u>O R D E R</u> |

## INTRODUCTION

This is a declaratory judgment action brought by Plaintiff Allstate Insurance Company ("Allstate") against Defendants Charles D. Wiseman, Francis Wiseman, and Leonty Fratis to determine its duty to defend and indemnify the Wisemans against Fratis' civil claims in state court. *See* Docket No. 1. There are currently several motions before the Court. First, pursuant to this Court's order at Docket No. 27, the collateral estoppel affect of the state court criminal judgment raised by Allstate against Charles D. Wiseman has been briefed by the parties and is now ripe for a decision. *See* Docket Nos. 13 (Mot.); 30 (Opp'n); 39 (Renewal of Mot.); 44 (Opp'n); 49 (Reply). The second and third motions pending before the Court are also by Allstate, which has moved for discovery of information regarding Francis Wiseman's juvenile proceeding. *See* Docket Nos. 34 (Mot.); 38 (Opp'n); 40 (Reply); 53 (Mot.); 57 (Opp'n); 65 (Reply). The fourth motion pending before the Court is a motion to compel discovery made by Fratis seeking discovery from Allstate. *See* Docket No. 42 (Mot.); 51 (Opp'n); 54 (Reply). The fifth motion pending before the Court is by Charles D. Wiseman who has moved the Court to accept a deposition to supplement his opposition on the collateral estoppel issue. *See* Docket No. 55 (Mot.); 64 (Opp'n); 67 (Reply). Also before the

1

EXHIBIT_____P_____
PG_____l____OF___6___

Court at this time is an unopposed motion for a status conference, *see* Docket No. 62, and a motion for a stay by Charles and Francis that is not yet ripe, *see* Docket Nos. 68 (Mot.); 69 (Mot.).

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 2001, brothers Charles D. Wiseman and Francis Wiseman, drove to downtown Anchorage with their friend, C.W.,[1] to "hunt drunk Eskimoes." *See* Docket No. 28 (video of incident). The threesome patrolled the downtown area in the Wiseman family Subaru, shooting paintballs at Alaska Natives that appeared inebriated and videotaping portions of the escapade. *See* Docket No. 1 at 3. Charles was charged with seven counts relating to the incident, but later entered a plea of *nolo contendre* to three counts of fourth degree assault. *See id.* Because Francis was a minor at the time of the incident, the records regarding his juvenile proceeding have not been disclosed. *See id.* Charles and Francis were both living at home at the time of the incident, and thus are insured under their parents' Allstate homeowner and automotive insurance policies. *See id.*

Leonty Fratis was one of the paintball victims. *See id.* at 4. Leonty Fratis has filed a civil action in state court seeking compensatory and punitive damages for the intentional and negligent actions of Charles and Francis, and their parents. *See id.* Allstate agreed to represent the Wisemans' in the state court action, but made a reservation of rights allowing Allstate to challenge whether it has a duty to defend and indemnify Charles and Francis. *See id.* This declaratory action was brought by Allstate to pursue its reservation of rights. *See id.* Allstate seeks a declaration that it has no duty to defend or indemnify Charles and Francis because the paintball incident is not an "occurrence" or "accident" within the coverage of the homeowner and automobile policies, or alternatively, that the paintball incident is an "intentional or criminal act" specifically excluded from coverage by the policies. *See id.* at 5–7.

---

[1] "C.W." (which is abbreviated to protect the identity of the minor) is not a party to this case. *See* Docket No. 1 at 4.

ORDER

F:\HOMEJUDGES\DOCS\SHARED\CIV\A01-0251.003.wpd

2

EXHIBIT _____ P
PG _____ 2 _____ OF _____ 16

## DISCUSSION

### A.     Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." *See* Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c).  Courts will construe all evidence and draw all evidentiary inferences in favor of the non-moving party. *See* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2727, at 459, 459 n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.  The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *See Provenz v. Miller,* 102 F.3d 1478, 1489-90 (9th Cir. 1996); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

### B.     Non-Mutual Collateral Estoppel

In the order at Docket No. 27, the Court set out the following issues to be addressed regarding collateral estoppel.  First, what is the scope of collateral estoppel in Alaska, and what facts is Charles collaterally estopped from denying?  Second, does the *mens rea* for fourth degree assault, (*i.e.*, reckless conduct), preclude as a matter of law, a finding that reckless assault constitutes an

ORDER

EXHIBIT_____ P
PG_____3____OF__16__

accident or occurrence within the coverage of the Allstate policies? And third, does the language of the Allstate policies that excludes coverage for "intentional or criminal conduct" encompass crimes that have a *mens rea* of negligence or recklessness, or does it only encompass intentional crimes?

### 1.    Scope of Collateral Estoppel in Alaska

Under Alaska law, a plea of *nolo contendre* to a serious crime may be used to collaterally estop a party from denying the facts and judgment which are the basis for the plea in a subsequent civil action. *See Burcina v. City of Ketchikan*, 902 P.2d 817, 821–22 (Alaska 1995); *Scott v. Roberston*, 583 P.2d 188, 191–94 (Alaska 1978), *modified by Howarth v. Pub. Defender Agency*, 925 P.2d 1330 (Alaska 1996). There are three prerequisites to the use of collateral estoppel on the issues decided by a prior conviction: "(1) the prior conviction is for a serious criminal offense, (2) the defendant in fact had a full and fair hearing, and (3) it is shown that the issue on which the judgment is offered was necessarily decided in the previous trial." *See Scott*, 583 P.2d at 191–92 (footnotes omitted).

The term "serious crime" includes all felonies as well as some misdemeanors. *See Howarth*, 925 P.2d at 1333–34. "Generally, any offense punishable by imprisonment should be considered to be a serious offense." *Scott*, 583 P.2d at 192. An exception is made for offenses that "although technically subject to incarceration, the likelihood of such punishment is so remote as not to justify its being considered as a serious offense for this purpose." *See Howarth*, 925 P.2d at 1334. The concern is that a defendant is more likely motivated to fully defend himself from a charge carrying a prison term, and conversely, that a defendant not facing prison time is not fully motivated to defend against a charge. *See Scott*, 583 P.2d at 192. In the present case, Charles was charged with, and entered a plea of *nolo contendre* to, assault in the fourth degree, a class A misdemeanor. *See* Docket No. 44, Ex. A; AS 11.41.230. As a class A misdemeanor, a conviction of fourth degree assault carries a maximum sentence of not more than one year. *See* AS 12.55.135. Charles was in fact sentenced to 180 days, with 120 days suspended. *See* Docket No. 44, Ex. A at 2. In light of the possible term of imprisonment of up to one year, and the actual term imposed of 180 days with 120 suspended, Charles had sufficient motivation to fully defend himself in this action.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CIV\A01-0251.003.wpd                                        4

EXHIBIT_____ P_____
PG_____ 4 ____OF____16____

Next, whether Charles had a full and fair hearing is not at issue. Criminal convictions that are entered with the aid of counsel are generally considered valid. *See Scott*, 583 FP.2d at 192. Charles was represented by counsel and there is no evidence of any deviations in the procedures or standard of conduct that would call his conviction into question. *See* Docket No. 44, Ex. C. A closer question is whether the facts Allstate seeks to estop Charles from denying were necessary to his conviction. *See id.* "A civil plaintiff is collaterally estopped from relitigating any element of a criminal charge to which he has pled *nolo contendre*." *Lashbrook v. Lashbrook*, 957 P.2d 326, 330 n. 2 (Alaska 1998) (quoting *Burcina*, 902 P.2d at 822). Charles pled *nolo contendre* to three counts of alternative theories of fourth degree assault as an accomplice. *See* Docket No. 44, Ex. A, to read in relevant part as follows:

> "11.41.230(a)(1); and/or (a)(3)": (a) A person commits the crime of assault in the fourth degree if (1) that person recklessly causes physical injury to another person; . . . [and/or] (3) by words or other conduct that person recklessly places another person in fear of imminent physical injury.

> "11.16.110(2)(A); and/or (B)": A person is legally accountable for the conduct of another constituting an offense if . . . (2) with intent to promote or facilitate the commission of the offense, the person (A) solicits the other to commit the offense; [and/or] (B) aids or abets the other in planning or committing the offense.

*See* Docket No. 44, Ex. A; AS.41.230(a)(1), (3); 11.16.110(2)(A)..

The homeowner policy provides coverage for any "bodily injury or property damage arising from an occurrence to which this policy applies, and covered by this part of the policy." *See* Docket No. 13, Ex. H at 25. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**." *See id.*, Ex. H at 5 (emphasis in the original). The automobile policy similarly covers "claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured **auto**." *See id.*, Ex. I at 2 (emphasis in the original). Both the automobile and homeowner policies exclude coverage for intentional or criminal acts. *See id.* 13, Exs. H at 26; I at 6. Allstate claims that the judgment against Charles on these counts establishes that Charles' participation in the paintball shooting of Fratis either 1) was not an accident within the automobile and homeowner policies issued to the Wisemans, or alternatively, 2) the incident was an intentional act or crime explicitly excluded from coverage. *See id.*.

ORDER

EXHIBIT P
PG. 5 OF 6



2.    **Coverage for "Accidents" Under the Allstate Policies**

The Alaska Supreme Court defines an accident as "anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected." *See Shaw v. State Farm Mut. Auto. Ins. Cos.*, 19 P.3d 588, 590 (Alaska 2001) (citations omitted). The incident is to be viewed from the perspective of the insured. *See id.* at 590–91. In *Shaw v. State*, Shaw's ex-boyfriend pulled alongside her car and shot her. *See id.* at 588. Shaw sought coverage under her own motor vehicle policy for the injuries she incurred. *See id.* Her policy provided coverage, similar to the policies at issue here, for "accidents" arising out of the use of the car. *See id.* The Alaska Supreme Court held that because the incident was unforeseen and unexpected from Shaw's perspective, it was an accident within the terms of her policy, even though the shooting by the ex-boyfriend was intentional and expected by him. *See id.* By contrast, in this case Fratis, the victim, is not the insured.[2] The question is thus whether the judgment in Charles' criminal case establishes that Charles, as the insured, did anticipate or foresee that his participation in the paintball shooting of Fratis would cause Fratis injury, or fear of injury.[3]

---

[2] Allstate also relies on *Kim v. National Indemnity Co.,* 6 P.3d 264 (Alaska 2000) to support its argument that whether an incident is unexpected or unforeseen is to be viewed from the perspective of the insured. *See* Docket No. 39 at 10. Charles attempts to undermine Allstate's reliance on *Kim* arguing that it was overruled. *See* Docket No. 30 at 14. *Shaw* did overrule Kim, but the premise for which Allstate cites to *Kim* was maintained in *Shaw*. *See Shaw,* 19 P.3d 590–91. *Kim* held that a minor who was molested by a cab driver was not covered by the cab driver's insurance because the incident was not unforeseen or unexpected for the cab driver. *See Kim,* 6 P.3d 26. In *Shaw*, the court noted that the minor could have sought coverage under the uninsured motorist provision because, in that situation, she would have been the insured and the incident would have been considered an accident because she did not foresee or expect to be molested. *See Shaw,* 19 P.3d 590–91. Thus, whether an event is unforeseen or unexpected is to be viewed from the perspective of the insured.

[3] Charles frames the question as whether he expected or foresaw that the operation of the video camera would cause injury, and then disputes whether an injury even occurred. *See* Docket No. 44 at 4–6. Regardless of which theory of assault that Charles was convicted of, causing injury or fear of injury, by pleading no contest to a mental state of reckless, Charles is estopped from denying that he was aware of the risk that his conduct would cause this result.

ORDER

EXHIBIT ____P____
PG ____6____ OF __16__



a.    **Specific Intent**

Allstate makes the argument that the judgment against Charles establishes that his reckless conduct was not an accident. *See* Docket No. 39 at 8–9. This is so, argues Allstate, because Charles was charged and pled guilty as an accomplice, which requires the specific intent to have the underlying crime carried out. *See id.*; *Hansen v. State*, 845 P.2d 449, 458 (Alaska 1993); *Echols v. State*, 818 P.2d 691, 695 (Alaska 1991). If Charles had the specific intent to carry out fourth degree assault, it cannot be said that the incident was unforeseen or unanticipated by him. Charles counters that he was charged alternatively as an accomplice or principal, and thus the fact of his specific intent is not definitively established. *See* Docket No. 44, Ex. B.

The second amended information does indeed charge Charles as "principal or accomplice." *See id.* But, by contrast, the judgment provides that Charles was convicted as both a principal and accomplice, as it does not list the statutes in the alternative. *See* Docket Nos. 13, Ex. F at 21; 44, Ex. A. The judgment for Count I for the shooting of Fratis reads as follows:

| COUNT | DATE OF OFFENSE | OFFENSE | STATUTE VIOLATED |
|---|---|---|---|
| Count I | 01/14/01 | Assault 4th | 11.41.230(a)(1) and/or (a)(3) 11.16.110(2)(A) and/or (B) |

*See* Docket No. 44, Ex. A. The terms "and/or" have been inserted within the two theories of assault and within the two theories of accomplice that Charles is convicted of, but noticeably lacking are the "and/or" terms between the assault statute and the accomplice statute. Also, both Allstate and Charles refer to the transcript for the entry of plea where the judge advised Charles' that he was pleading as an accomplice when discussing the judgment. *See* Docket Nos. 13, Ex. F at 21; 44 at 2–3; 49 at 12.

> At trial, *the state would have to put on evidence to prove beyond a reasonable doubt that you were an accomplice*; that is, that someone recklessly caused physical injury to another, or by words or other conduct recklessly placed another person in fear of imminent physical injury. In addition, the state would have to prove that you were an accomplice. Under a theory of accomplice liability, the state does not have to prove that you committed the principal conduct. They only have to prove that you acted together with the principals to bring about the result.
> . . .

ORDER

EXHIBIT_____ P
PG_____ 7 OF 16



[T]hey would have to prove you would be legally accountable for the conduct of the others, the person who drove or the person who shot. If, *with intent to promote or facilitate the commission of the offense*, you solicited the other to commit the offense, or aided or abetted the other in planning or committing the offense. So they would have to prove that the assault took place and that you aided and abetted the assault.

*See* Docket No. 13, Ex. F at 8–9 (emphasis supplied).

I will verify, if you'd like, under the amended information, Mr. Wiseman, you have pled no contest in count I to the fact that on or about January 14th, 2001, *as an accomplice*, you recklessly caused physical injury to Amy Keltner, Wayne Douglas, and Leonty Fratis, or by words or other conduct placed Amy Keltner, Wayne Douglas, and Leonty Fratis in fear of imminent physical injury.

*See* Docket No. 13, Ex. F at 21 (emphasis supplied). The judgment is clear on its face that Charles was convicted of being an accomplice. *See* Docket No. 44, Ex. A. The advisement by the Honorable Peter Ashman, Alaska District Court Judge, at Charles' entry of plea supports that reading of the judgment (*i.e.*, that Charles had the specific intent to have the crime carried out). The paintball assault cannot therefore be considered an unanticipated or unforeseen event by Charles, and the paintball assault is thus not an accident within the meaning of either the homeowner policy or the automobile policy.

### b.     Reckless Conduct

Even if the specific intent required of a conviction as an accomplice is disregarded, the mental state of reckless precludes a finding that the paintball incident was an accident. The mental state of reckless is defined as follows:

a person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person *is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists*; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk.

*See* AS 11.81.900(a)(3) (emphasis added). There is both a subjective and objective component essential to meeting this mental state element; proof that the defendant was actually aware of the risk, and proof that the defendant grossly deviated from the conduct of a reasonable person. *See Andrew v. State*, 653 P.2d 1063, 1065–66 (Alaska Ct. App. 1982).

ORDER

EXHIBIT _____ P
PG _____ 8 _ OF _ 16



By pleading no contest to a charge of fourth degree assault, Charles is estopped from denying that he was actually aware of the risk of injury, or fear of injury, that would result from his participation in the paintball shooting of Fratis. *See id.* at 1066 n.5 ("The test for recklessness is a subjective one—the defendant must actually be aware of the risk.") (quoting Commentary on the Alaska Revised Crim. Code, S. J. Supp. No. 47 at 142–43, 1978 S. J. 1399)).  Because Charles was actually aware of the risk, the result of his actions was not unforeseen or unexpected.  His actual awareness of the risk of injury or fear of injury resulting from his actions thus precludes a finding that the incident was an accident within the meaning of the policy.

In sum, whether Charles had the specific intent to cause injury or fear of injury, or whether he was actually aware of the risk of injury or fear of injury he caused, Charles is precluded from arguing that he did not foresee or expect this result.

### 3.    Exclusion of "Intentional or Criminal Acts"

Assuming for the moment that the paintball incident is an accident covered by the policies, there remains a question of fact whether the assault falls within the exclusions for intentional or criminal acts of the insured.  The homeowner policy excludes from coverage "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." *See* Docket No. 13, Ex. H at 26.  The automobile policy similarly excludes "bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person." *See id*, Ex. I at 6.

Charles argues that the exclusion for intentional acts does not apply because he did not intend to inflict bodily injury. *See* Docket No. 30 at 7–9.  The language of both policies suggests, and other courts have found, that there is both a subjective and objective exclusion that operate separately. *See Allstate Ins. Co. v. Brown*, 16 F.3d 222, 226 (7th Cir. 1994) (citing several other courts that are in accord with this interpretation of this language).  An act is excluded if either the insured intended to inflict bodily injury (a subjective standard), or if the insured's intentional (*i.e.*, volitional) or criminal act could reasonably be expected to result in bodily injury (an objective standard). *See id.* at 225.  Whether Charles intended to inflict bodily harm on Fratis remains a

ORDER

EXHIBIT_____ P
PG._____ 9 OF 16



question of fact not conclusively determined by his conviction because Charles was charged alternatively with causing fear of imminent bodily harm and/or causing bodily harm. *See* Docket No. 44, Ex. A.

Likewise the application of the exclusion for intentional or criminal acts, that may reasonably be expected to result in bodily injury remains a question of fact. While there is no disputing that Charles' actions were both of his own volition and in violation of the criminal code, the policy exclusion also states that Charles' intentional or criminal acts must reasonably be expected to result in bodily injury to be excluded from coverage. *See* Docket No. 13, Exs. H at 26, I at 6. The Court notes again that Charles' conviction was stated in the alternative (*i.e.*, causing fear of imminent bodily harm and/or actually causing bodily harm). *See* Docket No. 44, Ex. A. Because Charles' conviction does not conclusively prove that bodily injury resulted from Francis' actions, it cannot be said that bodily injury is the reasonably expected result of his intentional or criminal acts, it remains a question of fact. However, because the incident is not an accident within the coverage of the policy, it does not matter whether any of the exclusions apply.

**C.    Juvenile Records of Francis Wiseman**

Allstate has filed two motions seeking information relating to Francis' juvenile proceedings. The first motion seeks only information within Francis' control and the second motion seeks an order for the Division of Juvenile Justice of the Alaska Department of Health and Social Services to release its privileged records to Allstate. *See* Docket Nos. 34; 53. The Court will treat each in turn.

**1.    Information in Francis' Control**

Allstate is seeking an order to compel Francis to provide Allstate with any information regarding his juvenile proceeding pursuant to Federal Rule of Civil Procedure 37(a)(2). *See* Docket No. 34. It is undisputed that Francis Wiseman was a juvenile at the time of the paintball incident, and thus any court records regarding the disposition of any court proceeding against him are not available from the court for Allstate to inspect unless it has a "legitimate interest" in these records.

ORDER

EXHIBIT_____ P

PG_____ 10 _ OF _ 16 __



*See* AS 47.12.300.[4]  Allstate contends that it is merely seeking information that is under Francis'

control, and that it does have a legitimate interest in the documents.  *See* Docket No. 34 at 7.

Allstate further asserts that Francis owes a duty to Allstate to aid Allstate in this case by producing

the relevant information.  *See id.* at 5–6.

      As an initial matter, Francis is under no obligation to hand over these documents as part of

the cooperation clause in his policy.  It offends common sense to believe that Francis has a duty

under his policy to aid Allstate in an action brought against him by Allstate.  The duty to cooperate

"applies only when the insurer and insured are in a relationship of some trust to each other."  *See*

Lee R. Russ & Thomas F. Segalla, 14 *Couch on Insurance* § 199:9 (3d ed. 1999).  Cooperation

clauses have been held inapplicable when the insurance company and insured are adversaries in

litigation.  *See id.*  Francis does, however, have a duty to provide all discoverable materials to

Allstate.  *See* Fed. R. Civ. P. 26(b)(1).  Evidence is discoverable if it is relevant and may lead to

evidence admissible at trial, and there are no privileges that apply.  *See* Fed. R. Civ. P. 26(b)(1);

*Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).  The issue is whether AS 47.12.300(e) provides

a privilege that bars discovery of information regarding the juvenile proceeding in Francis' control.

      Pursuant to AS 47.12.300(e), Allstate does not have a legitimate interest in the official court

documents warranting discovery of those confidential documents.  The purpose of making juvenile

records confidential is so that a juvenile "will not bear the stigma of a criminal conviction for the

rest of their life."  *See Nao v. State*, 953 P.2d 522, 525 (Alaska Ct. App. 1998).  This is balanced in

---

[4] AS 47.12.300(e) reads in part:
    (e) The court's official records prepared under this chapter and not made public
    under this section are confidential and may be inspected only with the court's
    permission and only by persons having a legitimate interest in them.  A foster
    parent is considered to have a legitimate interest in those portions of the court's
    official records relating to a child who is already placed with the foster parent
    or who is recommended for placement with the foster parent.  A person with a
    legitimate interest in the inspection of a confidential record maintained by the
    court also includes a victim who suffered physical injury or whose real or
    personal property was damaged as a result of an offense that was the basis of an
    adjudication or modification of disposition.
*See* AS 47.12.300(e).

ORDER

EXHIBIT_____ P
PG____11____OF___16